Filed 2/6/24  P. v. Franco CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079952 |
| v. | (Super.Ct.No. RIF1408130) |
| RICKY CAMPOS FRANCO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  F. Paul Dickerson III, Judge.  Affirmed.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, Paige B. Hazard, Felicity Senoski and Elana W. Miller, Deputy Attorney Generals, for Plaintiff and Respondent.

In 2014, defendant shot three people. In 2019, a jury convicted defendant of three counts of attempted voluntary manslaughter. (Pen. Code, §§ 192, subd. (a), 664.)[1] The jury found the gang enhancement allegations untrue. (§ 186.22, subd. (b).) At defendant's original sentencing hearing, the trial court sentenced defendant to prison for a term of 25 years, eight months.

In defendant's first appeal, in 2021, this court reversed defendant's sentence and directed the trial court to grant defendant's motion for counsel for the sentencing hearing and then resentence defendant. (*People v. Franco* (May 26, 2021, E073793) [nonpub. opn] [2021 WL 2125885, *12] (*Franco*).)[2] Upon remand, in October 2022, the trial court again sentenced defendant to prison for a term of 25 years, eight months.

In January 2022, section 1109 was enacted, which specifically provides for bifurcation of gang enhancement allegations. (§ 1109, subd. (a).) Defendant contends his convictions should be reversed so that he can have a trial on the shootings that is not tainted with gang evidence. We affirm.

## FACTS

While selling marijuana in a fast-food parking lot, defendant's nephew (Nephew) was robbed by two men (the robbers). Afterward, the robbers' cousin (Cousin) began sending Nephew death threats. Defendant and others drove around until they saw

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] We cite to our unpublished opinion in this case for factual and procedural background purposes. (*In re Nelson* (2020) 56 Cal.App.5th 114, 119, fn. 2; *People v. Heard* (2022) 83 Cal.App.5th 608, 613, fn. 3.)

Cousin and the robbers in another car. While in their separate vehicles, defendant shot at Cousin and the robbers. At trial, defendant said he did not "throw up a gang sign" during the shooting and neither did Cousin and the robbers. Defendant asserted the shooting "ha[d] nothing to do with gangs"; "[i]t just ha[d] to do with family." (*Franco*, *supra*, 2021 WL 2125885, *1-4.)

The jury found defendant not guilty of the greater charges of three counts of attempted murder. (§§ 187, subd. (a) & 664.) The jury found untrue the allegations that (A) the three attempted killings were willful, deliberate, and premeditated (§ 189); and (B) the three attempted killings were committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)(C)).

On remand in the trial court for resentencing, defendant did not raise the issue of bifurcating the gang enhancement allegations, which had been found untrue during the jury trial.[3]

## DISCUSSION

Defendant contends section 1109 applies retroactively so he should have a retrial on the 2014 shootings. There is a split of authority on this issue, and it is currently pending before our Supreme Court.[4] A majority of this court has held that section 1109 is not retroactive (*People v. Boukes* (2022) 83 Cal.App.5th 937, 946-948, review

---

[3] The People contend defendant forfeited the bifurcation issue by failing to raise it in the trial court. We choose to address defendant's contention.

[4] The lead case at the Supreme Court is *People v. Burgos* (2022) 77 Cal.App.5th 550, review granted July 13, 2022, S274743.) The Supreme Court declined to decide the issue in *People v. Tran* (2022) 13 Cal.5th 1169, 1208 (*Tran*).

granted December 14, 2022, S277103), although Justice Slough disagreed with that holding (*id*. at p. 949 (conc. opn. of Slough, J.)). We need not delve into the issue in this case.

A majority of this court has also held that, when the sentence is the only part of a judgment that is reversed, then, on remand, the trial court lacks jurisdiction to readjudicate gang enhancements (*People v. Lopez* (2023) 93 Cal.App.5th 1110, 1119-1120, review granted Nov. 15, 2023, S281488); however, Justice Raphael disagreed with that holding (*id.* at pp. 1121, 1123 (dis. opn. of Raphael, J.)). In the instant case, on remand, the only issue before the trial court was resentencing. However, we need not address the split regarding jurisdiction.

If the Supreme Court decides that section 1109 is not retroactive or that the trial court lacks jurisdiction over the issue at resentencing, then there was no error. However, if section 1109 is retroactive and applies on remand for resentencing, then the error is harmless. We apply the prejudice standard set forth in *Watson* (*Tran*, *supra*, 13 Cal.5th at p. 1209), which requires reversal when "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

Section 1109 does not mandate exclusion of gang evidence in the non-gang portion of a bifurcated proceeding. Rather, gang evidence may be admitted "to prove other facts related to a crime." (*Tran*, *supra*, 13 Cal.5th at p. 1208.) Defendant presented a theory of self-defense. The prosecutor used the gang evidence to counter that theory, asserting it was a gang shooting—not self-defense.

4

During opening statements, the prosecutor told the jury, "They don't call the police to say 'Hey, I was robbed and these are the guys that robbed us, and it was at gunpoint.' What you'll find is that this family took it into their own hands and went gangster, right, because that's what they know." The prosecutor continued, "You're going to learn that three young men were very seriously hurt because these men decided to go to gangster [*sic*]."

During closing argument, the prosecutor said, "[The shooting] makes no sense to us, but in their world it—it makes sense. That's what you do. . . . [¶] . . . [¶] . . . And then they want to tell you this is . . . because they were afraid or they were scared. . . . They're not afraid." The prosecutor continued, "This was punishment for [the robbers'] disrespect. You know, how can [defendant's] family, these East Side Wilmas OG gangsters, keep selling drugs in Moreno Valley if they can get punked by a bunch of kids and get their drugs stolen? You can't do that. You have to step up and you have to punch back; right? What kind of . . . respect are you going to have as an OG gangster from Wilmington? You're not. You're not going to be able to hit county jail and run things if you are seen as a punk. That's why this happened."

The prosecutor's opening statement and closing argument relied on the theory that the shootings were motivated by defendant's desire for respect within the gang culture, thereby countering defendant's theory of self-defense. Accordingly, if a bifurcation motion had been granted, then the jury likely would have heard gang evidence at the trial on the attempted killings because the gang evidence supported the prosecutor's theory that the shootings were not conducted in self-defense.

Also, the prosecutor used the gang evidence to address the issue of witness credibility. The evidence of defendant's gang involvement provided insight into the credibility of Nephew's friend, Damian Nava (Nava), who participated in the shootings. Nava's interview with law enforcement reads, in relevant part:

"[Sheriff's Deputy:] And right now I'm going to help you get through this, but you don't need to protect [defendant]. You know [defendant]?

"[Nava:] Yeah.

"[Sheriff's Deputy:] Okay? He's crazy, man. Okay? What happened, man? You tell me your side because you're here for a reason, and nobody out there is going to care about what you have to say. That's why I'm talking to you. Okay? What happened, man?

"[Nava:] I want to tell you but I just don't want these guys to find out.

"[Sheriff's Deputy:] They're not going to find out, just me and you. They're in jail. You know they're in jail, right?

"[Nava:] (Nods head yes)

"[Sheriff's Deputy:] Do you know for what?

"[Nava:] Yeah, I know for what.

"[Sheriff's Deputy:] For what?

"[Nava:] For attempted murder or whatever it is."

The sheriff's deputy told Nava, "Don't protect people that you have nothing to do with. . . . Tell me what went down. They're already in jail and I got—I have a great

6

idea about what [other people involved in the crimes did]." Nava told the deputy details of the shootings. Then the conversation continued:

"[Sheriff's Deputy:] I'm going to show you some pictures. Okay?

"[Nava:] I don't want these guys to know.

"[Sheriff's Deputy]: Listen, bro. Right now it's me and you talking. Okay? These guys are in jail. Okay? I already know Robert has something to do with it. Okay? And I'm going to find out who Packman is, so I got to show you pictures and then we'll talk more. Okay?

"[Nava]: But I just don't want these guys to find out that I'm the one telling you all this."

Nava knew defendant was in jail. Nevertheless, three times Nava said he did not want defendant to learn that Nava told the deputy details of the crime. For the jury to understand Nava's fear, the jury needed some understanding of defendant's status in the Mexican Mafia. The fact that Nava risked implicating a shot caller in the Mexican Mafia gave Nava's statements credibility because one would not make such a statement lightly.

Defendant interprets the transcript as Nava not being fearful of defendant's involvement in the Mexican Mafia because Nava told the deputy details of defendant's crimes after the deputy confirmed that defendant was in jail. Therefore, defendant contends the Mexican Mafia evidence was not probative on the issue of credibility. We interpret the transcript differently. In our reading, Nava remained fearful of defendant, while defendant was in jail; however, Nava was persuaded that law enforcement already

7

had enough evidence to arrest defendant, such that Nava could speak to the deputy without defendant learning that it was Nava who gave details to the police.

In closing arguments, the prosecutor argued, "Initially [Nava] is not telling the truth [in the police interview]; right? But then he comes to that point where [Deputy] Magana confronts him and he says, Okay. Okay. You know, I want to tell you but I don't want these guys to find out. And if you see him and you take a look at him, he's scared. . . . [¶] Of course, he's afraid. But watch the video and you will see that he— that he is a scared kid. Now he's going to find himself going to county jail with them, and you already know that [defendant] was running things inside. I can't imagine how scared that kid was."

The prosecutor's argument explained that Nava had lied, but when Nava was visibly scared, he was telling the truth, and Nava's fear was rooted in defendant's gang status. Therefore, the gang evidence was relevant to credibility.

In sum, if a bifurcation motion had been granted, then evidence of defendant's gang involvement would still have been presented to the jury for purposes of countering defendant's theory of self-defense and supporting Nava's credibility. To the extent there was an error in not bifurcating, it is not reasonably probable that a result more favorable to defendant would have occurred absent the error. Any error in not bifurcating was harmless.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
                                           J.

We concur:

RAMIREZ _____
                    P. J.

MENETREZ _____
                    J.